subjects within the direction of the legislature. Provision has been made by statute for the sale of real estate of incompetent persons upon the petition of the committee, and the committee may, with the approval of the court, agree to an actual partition or a sale of real estate in which the incompetent person has an undivided share. Such undivided interest may also be sold in partition actions brought against the incompetent person, and I know of no reason why an action may not be maintained for partition of land, in the name of an incompetent person, by his committee, against other tenants in common. Such is the import of the chancellor's opinion in Gorham v. Gorham, supra. His conclusion that a decree in partition would not transfer the legal title of the incompetent person was based upon the fact that a committee was not authorized to maintain such an action, either by statute, or by the practice of the court of chancery. The statutory authority is now supplied in the section of the Code referred to. In the proceedings instituted by the petition of the committee, and in cases of actual partition by agreement, the incompetent person does not appear on the record, but is represented before the court by his committee. In other cases he appears, and acts through his committee. Actually naming the incompetent person as a party on the record is a matter of form only. In such a case as the present one, nothing is gained by making the lunatic the plaintiff. His rights are fully protected by his committee, and no sale can be made except pursuant to the direction and judgment of the court. That the legislature may authorize actions affecting the real estate of incompetent persons to be maintained by or against his committee admits, I think, of no doubt. And the question before us, therefore, is one solely of the construction of the section of the Code referred to. That the legislature, in adopting this section, intended to enlarge the powers of committees in respect to bringing actions on behalf of lunatics and other incompetent persons, is very clear, and it has prescribed the limitation upon that power. The test is, could the lunatic have maintained the action if the committee had not been appointed? As that test is fulfilled in this case, we are of the opinion that the court had jurisdiction of the subject-matter of the action, and that the judgment was properly granted; and the order appealed from must be affirmed, with costs. All concur.

---

(3 App. Div. 408.)

## DONNELLY v. NEW YORK & H. R. CO.

(Supreme Court, Appellate Division, Second Department. April 28, 1896.)

MASTER AND SERVANT—NEGLIGENCE OF MASTER—CONDITION OF APPLIANCES.

    A street-car company is not chargeable with negligence in permitting a switch leading to the car barn to be open, whereby a passing car was derailed, and the driver killed, where it appears that the switch was in good order, and of the kind generally used by other companies, that it was only opened in the morning to let cars out of the barn, and in the evening to let them in, that during the day it was securely fastened with an

iron plug, that the cars had been passing it every three minutes during the day of the accident, and there was no evidence as to how the switch was opened.

Appeal from circuit court, Rockland county.

Action by Christina Donnelly, as administratrix, against the New York & Harlem Railroad Company to recover damages for the death of Edward Donnelly, plaintiff's intestate. The complaint was dismissed, and plaintiff appeals. Affirmed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

Irving Brown, for appellant.
Charles C. Paulding, for respondent.

PRATT, J.    This action was brought to recover damages for the death of Edward Donnelly, plaintiff's intestate, upon Eighty-Fifth street, in the city of New York, June 11, 1894. The allegations of negligence set forth in the complaint are that the defendant permitted its switch in Eighty-Fifth street to remain open without proper attention, that defendant did not provide at said place a switchman to attend to such switch during the day, in not providing a proper and safe switch at said place, and in not keeping the same in good condition, closed and fastened. Defendant denies that the accident occurred by reason of any negligence on the part of the defendant, and alleges that the negligence of Edward Donnelly, or that of a competent fellow servant, caused the accident. At the time of the happening of this accident Edward Donnelly was a horse-car driver, employed by the New York & Harlem Railroad Company. On June 11, 1894, he was the driver of a car which ran from Madison avenue and Eighty-Sixth street to Eighth avenue and Eighty-Fifth street, going west. On Eighty-Fifth street there were switches leading from the main track of defendant into its stable, and, while the car driven by Donnelly was passing over these switches, it jumped the track, and Donnelly fell over the car, and was killed. The switch at the time was turned so as to turn the car into the stable, although, five minutes before the accident, a Second avenue car, going west through Eighty-Fifth street, had passed over the same switches in safety, and cars had been going west, and passing over the switch every three minutes, since 8 o'clock in the morning. The switch was a "standard switch" which swung from right to left, and, when set, was secured by an iron plug and a rubber. It was closed that morning, and cars were going over it all the morning. During the day the switch was not open at all. It was in use only in the morning to take out cars, and in the evening to put in cars, and during the day was closed, and secured by the iron plug. The same pattern of switch is used by other street-railroad companies.

How this switch happened to be connected at this time with the railroad, so as to turn the car to the right, towards the stable, does not appear. Undoubtedly, the switch was either turned, so as to connect and turn the car off, by some fellow servant of the plaintiff, or by accident the plug got out, so as to allow the switch

to move. The device for switching off the cars towards the stable was in perfect order, had been in use that morning, and was in use afterwards. The car, turning suddenly to the right, threw the plaintiff off of the platform, and over the dashboard, or to one side, and he was killed. There is no theory upon which this action can be maintained. If he was thrown off from the car by the sudden turning of the car, the risk of his being thrown from the car was what he assumed by accepting the employment. If the switch was turned by a fellow servant, that no liability was incurred by the company is too well settled to require citation of authority. No proof whatever was offered to show that the railroad or the car or the track was out of order, which caused the accident. The defendant was under no obligation to keep a man at this point to watch all the time, but only while the switches were in use, to take the cars out and in to the stable. It does not appear in what manner Donnelly was driving, whether slow or fast, whether he observed the track to see if the switch was open or closed, whether he saw the open switch and regulated his conduct accordingly, or whether seeing it he attempted to drive past it. There was a failure to prove any negligence upon the part of the defendant.

Judgment affirmed, with costs. All concur.